**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT DENHAM,** | : | |
| 857 Gibbard Ave. | : | CASE NO. 2:21cv496 |
| Columbus, OH 43201, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| **ABBOTT LABORATORIES**, | : | |
| 100 Abbott Park Rd., Ste 322 | : | |
| Abbott Park, IL 60064, | : | |
| | : | |
| *and* | : | **COMPLAINT** |
| | : | |
| **ABBOTT NUTRITION**, | : | |
| 3300 Stelzer Rd. | : | |
| Columbus, OH 43219, | : | |
| | : | **Jury Demand Endorsed Hereon** |
| Defendants. | : | |

## I. Preliminary Statement

1. This action seeks economic, compensatory, and punitive damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Reconstruction Era Civil Rights Act, 42 U.S.C. §1981, and/or the Ohio Laws Against Discrimination, R.C. Ch. 4112, committed when Defendants Abbott Laboratories and Abbott Nutrition ("Abbott" or "Defendants") terminated Plaintiff Robert Denham, an African-American male, for allegedly committing a line-clearance violation, while similarly-situated Caucasian employees committed the same or similar violations, but were not terminated.

1

## II.     Jurisdiction and Venue

2. Plaintiff brings race discrimination claims under the Reconstruction Civil Rights Act, 42 U.S.C. §1981, and the Ohio Laws Against Discrimination, R.C. 4112.99.

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

4. Declaratory, injunctive, and equitable relief, including reinstatement, are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the common law of the State of Ohio.

5. Compensatory and punitive damages may be awarded under §1981; R.C. 4112.99; and the common law of the State of Ohio.

6. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; Fed. R. Civ. P. 54; and the common law of the State of Ohio.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in and around Franklin County, Ohio, where Abbott Nutrition's headquarters is located at 3300 Stelzer Road, Columbus, Ohio 43219; it conducts its operations there; and Mr. Denham worked at Defendants' facility located in Columbus, Ohio.

## III.    Parties

8. Plaintiff Robert Denham ("Mr. Denham") is a 53-year-old African-American male who resides in Franklin County Ohio.

9. Defendant Abbott Laboratories ("Abbott" or "Defendants") is an Illinois corporation headquartered in the state of Illinois which operates facilities and offices in the City of Columbus, Ohio in Franklin County Ohio.

10. Defendant Abbott Nutrition ("Abbott" or "Defendants") is a wholly-owned subsidiary of Defendant Abbott, which operates a plant, facilities, and offices in Columbus, Franklin County Ohio.

**IV. Facts**

11. Mr. Denham began his employment at Abbott first at its predecessor, Ross Labs, in Columbus, Ohio, and later at Abbott and Abbott Nutrition in Columbus, Ohio, as a temporary employee through the Manpower Staffing Agency, on or around February 9, 2002, in the position of Housekeeper.

12. Mr. Denham was promoted to the position of Housekeeping Crew Leader in or around March of 2002, while still working as a temporary employee through the Manpower Staffing Agency.

13. In or around February of 2004, Mr. Denham was hired by Defendants as a regular employee in the position of Crew Leader, and worked part-time for approximately 20 hours per week, until early 2017.

14. In early 2017, Mr. Denham was promoted to the full-time position of Production Specialist Operator ("PSO") in Defendants' plant and reported to Manager Robert Fuller ("Mr. Fuller"), who is Caucasian, and the compensation for his PSO position at the time of his termination was approximately $ 21.43 per hour, or $44,574.00 annually, plus fringe benefits.

15. During Mr. Denham's first two weeks as a PSO, his manager Mr. Fuller, constantly criticized him, claiming that he was not working fast enough, and advised him that he should seek a position in another department.

16. Mr. Fuller singled Mr. Denham out in front of three other employees and asked them if they thought he was working fast enough.

17. Mr. Denham's prior performance evaluations had consistently rated him as meeting all job expectations.

18. Mr. Denham complained about Mr. Fuller to the Human Resources Department.

19. Mr. Fuller told Mr. Denham that Mr. Denham's "ass would be on the line before his," or used words to that effect.

20. Kyle Beck was subsequently hired as a Front-Line Leader ("FLL"), and became Mr. Denham's supervisor.

21. On or around February 15, 2019, Mr. Denham was working alone on the bottling line; two employees are typically assigned to the task.

22. After working alone for six hours of a twelve-hour shift, Mr. Denham requested a break, and PSO Varlee Kromah ("Mr. Kromah") reluctantly filled in for him while on break.

23. Upon Mr. Denham's return from break, he and Mr. Kromah completed a batch change on the line, and the pin that separates the new batch from the old batch was not properly put in place.

24. As a result of the improper pin placement, bottles on the line became mixed up, but Mr. Denham caught the error on the same shift, it was corrected, and no damage was caused.

25. On February 21, 2019, Mr. Denham worked with PSO Renee Reed and completed a batch change without incident, but the next day a bottle was found in a down bin, which constitutes a line-clearance violation.

26. Defendants initially accused Mr. Denham of the violation, but later retracted the accusation.

27. Ms. Reed, a Black female was not accused of a line-clearance violation.

28.     On or around February 25, 2019, Mr. Denham was called into a conference with Defendants' corporate Human Resources Department and asked about the February 15, 2019 line clearance incident.

29.     Mr. Denham was advised that he was being placed on a paid suspension pending further investigation.

30.     It is Mr. Denham's understanding that PSO Varlee Kromah was also suspended at that time.

31.     On or around March 14, 2019, Mr. Denham's Department Manager, Jeff Mason, called to inform him that he was terminated.

32.     PSO Varlee Kromah, who is African, was called to return to work on March 15, 2019, and other than Mr. Kromah working in the plant area for a longer period of time, Mr. Denham is unaware of any significant differences in their employment records or culpability for the line-clearance violation.

33.     Mr. Denham worked for Defendants from February of 2002 until he was terminated on March 14, 2019, a total of approximately 17 years.

34.     During Mr. Denham's 17-year tenure, he was not written up, reprimanded, or disciplined for performance, attendance, or any other issue.

35.     During Mr. Denham's 17-year tenure, he consistently received positive performance evaluations and no performance issues were noted.

36.     It is Mr. Denham's belief that at some time in 2017, Caucasian employee Daniel Langley ("Mr. Langley"), who held the same position of Production Specialist Operator that Mr. Denham held, committed a line-clearance violation resulting in bottles on the line getting mixed up.

5

37. Mr. Langley was not suspended or terminated for his line-clearance violation.

38. It is Mr. Denham's belief that at some time in 2019, another team in Defendants' facility comprised of similarly-situated employees, committed a line-clearance violation that resulted in a bottle mix-up, wherein the wrong contents were placed into bottles, the error was not caught, the bottles were shipped to the customer, and a recall of the product was required.

39. No one on the team where a line-clearance violation occurred that required a product recall was terminated.

40. It is Mr. Denham's belief that similarly-situated employee Kelly Seagraves ("Ms. Seagraves"), a Caucasian female Production Specialist Operator, violated Defendants' rules with at least three line violations between February of 2015 and February of 2019; numerous production errors; sleeping on the job; and committed various Occupational Safety and Health Administration ("OSHA") violations.

41. Ms. Seagraves was not suspended or terminated for committing line violations on at least three occasions, production errors, sleeping on the job, and committing OSHA violations.

42. Mr. Denham, an African-American male with no prior disciplinary record, was suspended and then terminated, for an alleged single line-clearance violation, while similarly-situated Caucasian employees committed the same, similar, and/or more severe violations, and were not suspended or terminated even though they were under basically the same line of command and subject to the same policies and practices as Mr. Denham.

43. On April 15, 2019, Mr. Denham applied for unemployment benefits with the Ohio Department of Job and Family Services ("ODJFS").

44. On May 2, 2019, the ODJFS issued a Determination finding that Mr. Denham was "discharged without just cause" and that he was eligible to receive unemployment compensation benefits.

45. But for Mr. Denham's race, African-American, he would not have been terminated.

46. As a direct and proximate result of Abbott's discriminatory discipline and termination of Mr. Denham, he suffered and continues to suffer economic damages in the form of lost salary and fringe benefits even though he has made reasonably diligent efforts to secure comparable employment.

47. As a direct and proximate result of Abbott's discriminatory discipline and termination of Mr. Denham, he suffered and continues to suffer emotional distress, humiliation, frustration, and related pain.

48. By terminating Mr. Denham on pretextual grounds, Abbott acted with conscious disregard toward his right to remain free from discrimination, even though its conduct had a great probability of causing him economic and emotional hardship, and did cause such harm.

**V.** **Claims**

    **A.** **Count I: Violation of Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981.**

49. Paragraphs 1 through 48 are incorporated herein as if fully set forth.

50. By terminating Mr. Denham because of his race, Abbott violated 42 U.S.C. § 1981.

    **B.** **Count II: Violation of Ohio Laws Against Discrimination, R.C. 4112.99.**

51. Paragraphs 1 through 50 are incorporated herein as if fully set forth.

52. By terminating Mr. Denham because of his race, Abbott violated the Ohio Laws Against Discrimination, R.C. 4112.99.

**VI.** **Prayer for Relief**

WHEREFORE, Mr. Denham is entitled to and prays for the following relief:

A. a declaration that Abbott has violated 42 U.S.C. § 1981 and/or the Ohio Laws Against Discrimination;

B. equitable relief of reinstatement with expungement of the alleged line violation, suspension, and termination, from his personnel file;

C. wages, salary, employment benefits, and other compensation denied or lost to him, exceeding $75,000, because of Abbotts' violations;

D. compensatory and punitive damages in an amount exceeding $25,000;

E. pre-judgment and post-judgment interest:

F. costs and attorneys' fees; and

G. such other relief as the Court deems fair and equitable.

Respectfully submitted,

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

By: */s/ John S. Marshall*
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

By: */s/ John S. Marshall*
John S. Marshall (0015160)